BOARD OF EDUCATION OF THE UNION SCHOOL DISTRICT OF THE CITY OF OWOSSO v. GOODRICH.

1. STATUTES—CONSTRUCTION — GENERAL ACT INCONSISTENT WITH LOCAL.

That a general act will not repeal a special or local inconsistent act on the same subject is not a rule of positive law, but only one of the rules of construction recognized as raising such presumption, refutable and with the limitation that it must yield to an otherwise manifest legislative intent appearing in the language of the act, which is to be construed in the light of its subject-matter and purposes, other existing legislation upon the same subject, the relative times of their enactment, with all circumstances or related matter proper to consider for the purpose of discovering the legislative intent.

2. SCHOOLS AND SCHOOL DISTRICTS—BONDED INDEBTEDNESS—GENERAL SCHOOL LAWS SUPERCEDE LOCAL ACT.

The provisions of 2 Comp. Laws 1915, § 5712, authorizing any school district by a majority vote of its qualified electors to bond for an amount not exceeding 10 per cent. of its assessed valuation, *held*, applicable to the Union School District of the City of Owosso, in view of Act No.

368, Laws 1871, creating said district, providing that it should have all the powers and privileges conferred upon school districts by general law in addition to those conferred by the local act, although by said local act its bond limit at that time was fixed at $50,000, which was the same as then provided in the general law.

3. STATUTES—CONSTRUCTION BY PUBLIC OFFICERS.

While not controlling, the practical' construction given to doubtful or obscure laws in their administration by public officers and departments with a duty to perform under them is taken note of by the courts as an aiding element to be given weight in construing such laws, and is sometimes deferred to when not in conflict with the indicated spirit and purpose of the legislature.

Certiorari to Shiawassee; Collins (Joseph H.), J. Submitted January 13, 1920. (Calendar No. 28,991.) Decided January 28, 1920.

Mandamus by the board of education of the union school district of Owosso to compel William R. Goodrich, secretary of said board, to give proper notice of a special meeting and election. From an order granting the writ, defendant brings certiorari. Affirmed.

*Van R. Pond,* for appellant.

*Pulver & Bush,* for appellee.

STEERE, J.   The union school district of the city of Owosso was created by Act No. 368, Laws 1871. It succeeded to the rights, duties, liabilities, property and territorial limitations of a former union school district and embraces the present city of Owosso with some outlying contiguous territory. The initial section of the local act creating it provides:

"SECTION 1. *The People of the State of Michigan enact,* That the territory now embraced within fractional union school district number one, Owosso and

Caledonia, shall constitute a single school district, and shall be known and designated as 'Union school district of the city of Owosso,' and such district shall have all the powers and privileges conferred upon school districts by general law, and, in addition thereto, such powers and privileges as are hereinafter conferred by this act."

Section 5 of the act provides that the qualified electors of the created district may—

"by a majority vote of those present and voting at any annual meeting, or at any special meeting called for such purposes, raise by tax upon the taxable property in said district such sum or sums as shall be necessary to purchase lots, build school houses and furnish the same, provide apparatus and fuel, establish and maintain a district library, * * * authorize the board of trustees to borrow money, on the bonds of the district, for such terms of years, and at such rate of interest, not exceeding ten per cent. per annum, as the meeting may direct, for the purpose of building school houses and making additions thereto, or for the payment of bonds to become due: *Provided,* That such indebtedness shall at no time exceed fifty thousand dollars."

At a regular meeting of the board of education of said district held October 23, 1919, a resolution was adopted calling a special meeting of the electors of the district for the purpose of voting upon the question of borrowing $200,000 on bonds of the district for the purpose of erecting and properly equipping a proposed school building which the board determined was a necessity. To that end the board also by resolution directed its secretary, defendant Goodrich, to prepare a requisite number of printed ballots for said election and give proper notice of time, place and purpose of such meeting as required by law. This defendant declined to do, filing written reasons for his refusal with the board, which were in brief that the bonded indebtedness of said district was limited by

the local act creating it to $50,000, four-fifths of which amount had already been issued.

Application was then made by the board to the circuit court of Shiawassee county for a writ of mandamus to compel Goodrich to give proper notice of the special meeting and election to be held, as provided by said resolution, on the 6th of November, 1919. An order to show cause was issued and answer filed by defendant. Hearing was duly had upon the issue raised and a peremptory mandamus was issued by the circuit court requiring defendant to comply with the resolution of said board; also providing that as the time set for such special election had passed defendant should comply with any further order or resolution of the board fixing a later election day. Defendant then removed the proceeding to this court for review on certiorari to mandamus.

All resolutions, records and other proceedings necessary to clearly present the question are carefully prepared and in regular legal form. No facts are in dispute and no objection made to the regularity of any steps taken, aside from defendant's denial of the district's right to increase its bonded indebtedness beyond the limit specified in the proviso to section 5 of Act No. 368.

It is admitted the present bonded indebtedness of the district amounts to $40,000. Under the proviso in section 5 of the act, further bonded indebtedness would be limited to $10,000 and the single question of law involved is whether or not section 5712, 2 Comp. Laws 1915, operates to enlarge the district's power to bond as proposed. The trial court was of the opinion that it did under the rulings by this court in *Public Schools of Muskegon* v. *Smith,* 173 Mich. 570, and *Board of Education of Traverse City* v. *Straub,* 182 Mich. 665.

Defendant relies upon and cites numerous authori-

ties to sustain the proposition that a general affirmative act without express words of repeal does not as a rule operate to repeal a special or local act on the same subject even though the two are inconsistent and the terms of the general law are broad enough to include the inconsistent provision embraced in the special act. As to the *Muskegon* and *Traverse City Cases* it is urged that the important question there involved was the power of the districts to issue bonds, for which no provision was made in the special acts creating them, while in the instant case the power is expressly conferred, with a limitation, and the reasoning of the court in those cases, holding that the general school laws gave the districts such right, has no application here.

The rule which defendant invokes to the effect that a general act will not repeal a special or local inconsistent act on the same subject is not a rule of positive law but only one of the rules of construction recognized as raising such presumption, refutable and with the limitation that it must yield to an otherwise manifest legislative intent appearing in the language of the act which is to be construed in the light of its subject-matter and purposes, other existing legislation upon the same subject, the relative times of their enactment, with all circumstances or related matter which may aid construction and is proper to consider for the purpose of discovering the legislative intent.

It is not without significance that section 5712, 2 Comp. Laws 1915, authorizing any school district by a majority vote of its qualified electors to borrow money and issue bonds therefor to an amount not exceeding ten per cent. of its assessed valuation, is section 1 of chapter 6 of Act No. 164, Pub. Acts 1881, which is a comprehensive general law enacted with the indicated intent to amend, harmonize and recast existing school laws into a uniform system. It is a

lengthy enactment, divided into 13 chapters with sub-titles, being entitled, "An act to revise and consolidate the laws relating to public instruction and primary schools, and to repeal all statutes and acts contravening the provisions of this act."

As qualifying the purpose declared in the title, defendant emphasizes section 10 of chapter 13 of the act (2 Comp. Laws 1915, § 5760), which under the sub-title "Penalties and Liabilities" provides:

"All provisions of this act shall apply and be in force in every school district, township, city and village in this State, except such as may be inconsistent with the direct provisions of some special enactment of the legislature."

Section 1 of chapter 6 (2 Comp. Laws 1915, § 5712) was however radically amended by subsequent legislation, in its present form by Act No. 53, Pub. Acts 1913. In that connection it may be noted that Act No. 146 of the same session amended with similar title and in like manner section 17 of chapter 2 of the same act. As applied to the issue involved in *Burton* v. *Koch,* 184 Mich. 250, it was said of the legislative intent as indicated by such method of amendment:

"It is evident that the legislature intended there should be no doubt about the application of the amended law to every school district in the State. Intending to establish uniform qualifications for voters, the legislature by Act No. 146 of the Public Acts of 1913, instead of amending section 10 of chapter 13 by way of proviso or otherwise, amended section 17 of chapter 2 so as to indicate precisely the purpose to be accomplished."

In the instant case we have not only the legislative intent as indicated by a like method of amending another section in the same general school law by a separate act, and also the plainly stated legislative intent in Act No. 368, Laws 1871, that the union school district of the city of Owosso should have all powers and privi-

leges conferred upon school districts by general law and, in addition, such as are conferred by the local act itself, in which the powers granted by the general law are first named and made applicable. Following and in addition to them are such powers as are conferred by the local act creating the school district. There is nothing restrictive in the language adopted, which in the connection used fairly contemplates future as well as existing general laws conferring powers and privileges on school districts. In 1871 the general school law graded the power of district schools to borrow by the number of children in them between the ages of five and twenty years, with a limitation that "no school district shall have an indebtedness to exceed fifty thousand dollars for money thus borrowed" (1 Comp. Laws 1871, § 3726). Section 5 of Act No. 368 conforms to that limit. Whether thereby conferring any additional power or privilege upon the district for the time being is not disclosed. Such may perhaps be surmised, since the population of Owosso city in 1870 was but 2,065, as shown by the official census report of that year, and of the entire county of Shiawassee but 20,858. The city now has a population of approximately 14,000, and the school district an assessed valuation of over $9,000,000, which under the general school law gives a bonding limit of $900,000.

While not controlling, the practical construction given to doubtful or obscure laws in their administration by public officers and departments with a duty to perform under them is taken note of by the courts as an aiding element to be given weight in construing such laws, and is sometimes deferred to when not in conflict with the indicated spirit and purpose of the legislature. We regard as worthy of consideration the opinions of the attorney general upon this subject in reply to inquiries from the State superintendent of public instruction and the superintendent of Jack-

son public schools, wherein the conclusion is reached that in certain cities whose school districts were limited in their power to borrow by former local acts (a form of legislation now prohibited by our Constitution) they may proceed under the general school law, if the qualified voters so determine, and issue valid bonds pursuant to the terms and within the limits of the general law. Attorney General's Report of 1913, pp. 277-387.

We cannot agree with defendant's contention that the reasoning of this court in the *Traverse City* and *Muskegon Cases* has no application here because it was there only held that the general law conferred a power not contemplated by the local acts creating the districts, while in this case the power to bond is expressly conferred by the local act, and limited. In those cases, as in this, power is conferred by local act to borrow money within specified limits for purchase of schoolhouse sites and erection of school buildings, if so determined by a majority of the qualified electors of the district present and voting thereon at a meeting duly held—in those cases by "loan" and in this by "bonds" of the district. A variation in wording rather than meaning which this court held in substance was a distinction without a difference in intent and power conferred. An examination of the briefs and records in each of those cases confirms, as we think the opinions themselves fairly show, that the controlling and most seriously considered question then before the court was the power of the districts to borrow money for the purposes proposed in excess of the limit fixed by their local acts. They having power to borrow, the implied right to issue bonds for the amount borrowed was a natural and logical sequence, within the purview of the general school law upon that subject.

We find no occasion to disagree with the conclusion of the trial court that the situation presented here is

in essentials closely analogous to that shown in *Board of Education of Traverse City* v. *Straub, supra,* or to disturb its mandate in this proceeding.

The judgment is affirmed.

MOORE, C. J., and BROOKE, FELLOWS, STONE, CLARK, BIRD, and SHARPE, JJ., concurred.