## MURPHY v STATE OF MICHIGAN

Docket No. 77-428. Submitted June 6, 1978, at Lansing.—Decided September 19, 1978.

Brigid Murphy, widow of the late Detroit Recorder's Court Judge George Murphy, began collecting a retirement annuity, pursuant to the judges' retirement system act, upon Judge Murphy's death in 1960. At the time of Judge Murphy's death, the annuities to which circuit judges and recorder's court judges were entitled were tied to salary increases that might be granted active circuit judges from time to time. This so-called "escalator clause" was repealed in 1961. A subsequent Michigan Supreme Court case held that judges who had retired prior to 1960 had a vested contractual right to the escalator benefits, notwithstanding the repeal of the escalator clause.

Brigid Murphy brought an action in the Court of Claims against the State of Michigan, the Department of Management and Budget, the Judges' Retirement Board and the Judges' Retirement System contending that she is entitled to an annuity based on the salary being paid current circuit judges. She has been receiving an annuity based on the salary being paid circuit judges at the time of Judge Murphy's death. Summary judgment for defendants in the Court of Claims, Ronald M. Ryan, J. Plaintiff appeals. *Held:*

A widow's annuity is different and separate from that paid to a judge, and is not subject to the escalator clause. Therefore, the plaintiff is entitled only to an annuity based on the salary being paid circuit judges at the time of Judge Murphy's death.

Affirmed.

CYNAR, J., dissented. He would hold that the plaintiff had obtained vested rights to the escalator benefits as a third-party beneficiary of the contract between the state and her deceased husband. He would reverse.

OPINION OF THE COURT

REFERENCE FOR POINTS IN HEADNOTES
[1, 2] 46 Am Jur 2d, Judges § 65.

1. PENSIONS—CIRCUIT JUDGES—RECORDER'S COURT JUDGES—RETIRE-
MENT ANNUITIES—JUDGES' WIDOWS—ESCALATOR CLAUSE.

A widow of a former circuit court judge or a former judge of
Recorder's Court of Detroit is entitled to an annuity based on
the salary being paid circuit judges at the time of the death of
the former circuit court or recorder's court judge; an escalator
clause which, before it was eliminated in 1961, tied a retired
judge's annuity to salaries paid to active circuit judges does not
apply to a widow's annuity.

DISSENT BY CYNAR, J.

2. PENSIONS—CIRCUIT JUDGES—RECORDER'S COURT JUDGES—RETIRE-
MENT ANNUITIES—JUDGES' WIDOWS—ESCALATOR CLAUSE.

*An escalator clause in the judges' retirement system act which,
prior to its elimination in 1961, tied the annuity due to a
retired circuit court judge or to a retired judge of Detroit
Recorder's Court to the salaries being paid to active judges,
provided the judges who retired in or before 1960 a vested
contractual right to the escalator benefits; this escalator clause
is equally applicable to an annuity due to the widow of a
former circuit or recorder's court judge where the former judge
died in 1960 or before.*

*Robert L. Blinstrub,* for plaintiff.

*Frank J. Kelley,* Attorney General, *Robert A.
Derengoski,* Solicitor General, and *Gerald F.
Young* and *Charles F. Keeley,* Assistants Attorney
General, for defendants.

Before: ALLEN, P. J., and CYNAR and D. R. FREE-
MAN,* JJ.

D. R. FREEMAN, J. Plaintiff appeals as of right a
January 11, 1977, Court of Claims order granting
defendants' motion for summary judgment pursu-
ant to GCR 1963, 117.2(1).

Plaintiff, the widow of the late Detroit Record-
er's Court Judge George Murphy, pursuant to the
judges' retirement system act, MCL 38.801 *et seq.;*

---

* Circuit judge, sitting on the Court of Appeals by assignment.

MSA 27.125(1) *et seq.,* began collecting a retire-
ment annuity upon Judge Murphy's death in 1960.
It is undisputed that she qualifies for a retirement
annuity. The only question is the amount of the
annuity. Plaintiff contends that she is entitled to
an annuity based on the salary currently being
paid circuit judges; defendants contend that she is
entitled only to an annuity based on the salary
being paid circuit judges at the time of Judge
Murphy's death. She has been receiving the latter
amount.

At the time of Judge Murphy's death in 1960,
§ 19a of the statute stated that a widow was enti-
tled to an annuity "in the amount of 1/2 of the
retirement annuity provided for such judge in
section 14 of this act". 1956 PA 224. The phrase
"such judge", of course, refers to the widow's
husband. Section 14 of the act then provided that
a recorder's court judge receive an annuity of "1/2
the annual salary being currently paid by the
state to the circuit judges". 1956 PA 224. This
provision has been referred to as the "escalator
clause" because it tied the amount of a judge's
pension to the salary increases that might be
granted active circuit judges from time to time. In
1957, in response to an inquiry from the Executive
Secretary of the Judges' Retirement System, the
Attorney General construed these provisions:

"As you point out, section 19a as now amended
provides that the widow of a judge dying in office or on
retirement after September 28, 1951, is entitled to
apply to the retirement board for and to receive for life
a retirement annuity in the amount of half of the
retirement annuity provided for such judge in section
14.

"Section 14 of the act, as amended in 1956, now
contains an escalator clause tying in the annuity of the
retired judges to the going salary for occupants of

positions similar to those hitherto occupied by such annuitants. This section was discussed in Opinion No. 2810, issued on December 18, 1956.

"Therefore your present question in essence is this: Does the annuity payable to a widow under section 19a become fixed as of the amount due the judge at the time of his death, or does the amount of the annuity due to her continue to fluctuate with the salary being paid to judges currently on the bench?

"We think the language of the statute provides a ready answer to this question, referring, as it does, to '1/2 the annuity provided *for such judge.*' The annuity to which the judge is entitled is fixed as of the date of his death since it is clear that subsequent to his death he is entitled to no annuity.

"The widow can have no greater interest in his pension than he has at the time of his death. As shown above, the Judges' Retirement Act makes her annuity half that provided for him.

"The statute contains the provision, at section 19a, setting forth requirements which must be met in order for the widow to qualify for *her* annuity. These requirements include the following: she must have been his wife for at least 10 years during his judicial service; she must have reached the age of 55; she must make application to the retirement board for retirement annuity; she ceases to be entitled to the annuity upon remarriage.

"It is clear, therefore, that under the section establishing the widow's annuity, her annuity is a different pension from his, and not merely a device whereby she steps into his shoes and continues to receive his pension. She must qualify for her own annuity, as just set forth.

"Finally, we note that the statute nowhere contains any language providing for an 'escalator' clause whereby the pension of the widow fluctuates with the going rate for justices holding positions similar to that occupied by her husband when alive.

"For the reasons set forth above, it is my ruling that the amount of the widow's annuity is fixed at half the amount provided for such judge at the time of his

death, and not the annuity which would currently be paid a judge with the same service qualifications." (Footnotes omitted; emphasis in original.) 1 OAG, 1957, No 2953, pp 165–166 (April 12, 1957).

The statute was amended in 1961 to eliminate the escalator clause and to provide that a recorder's court judge receive a pension in the amount of 1/2 of the salary being paid by the state to the judge at the time of his retirement. 1961 PA 169.

In 1964, a number of judges who had retired before 1960 sued, asserting that they were still entitled to the benefit of the escalator clause. *Campbell v Judges' Retirement Board,* 378 Mich 169; 143 NW2d 755 (1966), held that these judges had a vested contractual right to the escalator benefits, notwithstanding the repeal of the escalator clause.

The Executive Secretary of the Judges' Retirement System asked the Attorney General for a construction of the widow's annuity provisions in light of *Campbell, supra.* In an informal opinion letter dated October 19, 1967, the Attorney General responded:

"In Attorney General Opinion No. 2953, 1957, page 165, opinion of the Attorney General was given in reference to Section 19a on the same question presented here:

" 'May we have your opinion as to whether the "1/2 of the retirement annuity provided for such judge" refers to the annuity to which he would have been entitled at the time of his death, or the annuity which would be currently paid a judge with the same service qualifications.'

"The Attorney General ruled that a widow can have *no greater interest in his pension than a judge has at* the time of his death. The widow's pension is different and separate from that paid the judge. She must qualify

for her own annuity. The escalator clause was never contained in Section 19a providing for a widow's benefit. The Attorney General thus concluded that the widow's pension was fixed by the amount paid the judge at death and the escalator clause in Section 14 did not apply to it.

"In *Campbell v Judges Retirement Board, supra,* it was held that judges retiring while the escalator clause was in effect had a vested or contractual right to the benefits provided by the escalator clause. Its subsequent elimination from the act could not prevent its application to such judges.

"Obviously, such decision is not material to the present situation and does not change the ruling of OAG No. 2953, supra. Since the escalator clause was never applicable to a Section 19a widow's benefit, it is not a contractual or vested right now. The ruling in *Campbell v Judges Retirement Board* did not create rights that previously did not exist nor did it change the language of Section 19a.

"Such interpretation of Section 19a by the Judges Retirement Board is of long standing. It has been uniformly applied to all those who received widow's annuities under the section. It thus is entitled to great weight and would not be overturned unless a different construction was plainly required. *Roosevelt Oil Co. v Secretary of State,* 339 Mich 679 [64 NW2d 582] (1954); *Aller v Detroit Police Department Trial Board,* 309 Mich 382 [15 NW2d 676] (1944).

"Additionally, Section 19a was amended by Act 313, PA 1965 but not so as to change the administrative interpretation. It has been held that re-enactment of language construed by an administrative agency shows legislative approval because executive interpretation is presumed to have been known to the legislature. *Chrysler Corporation v Smith,* 297 Mich 438 [298 NW 87] (1941)."

We understand and are sympathetic to plaintiff's plight. Inflation has substantially eroded the value of her annuity. Yet, we conclude that the Attorney General's construction of the applicable statutory

provisions is correct. Plaintiff is entitled only to an annuity based on the salary being paid circuit judges at the time of Judge Murphy's death. This she is receiving. Relief, if any there be, must come from the Legislature.

Affirmed.

ALLEN, P. J., concurred.

CYNAR, J. *(dissenting)*. I respectfully dissent from the majority opinion. At the time of Judge Murphy's death in 1960, § 19a of the act stated that a widow was entitled to an annuity equal to "1/2 of the retirement annuity provided for such judge in section 14 of this act". Although the widow's annuity may constitute a different pension than that of the judge, this statute clearly makes the amount of her pension mathematically dependent upon that provided for the judge in § 14 of the act.

At the time of Judge Murphy's death in 1960, § 14 of the act provided that a recorder's court judge receive an annuity of "1/2 the annual salary being currently paid by the state to the circuit judges". The only conceivable reason for such an "escalator clause" was to counteract the effect of inflation upon the annuity.

I see no reason to distinguish between the annuity of the widow and that of a judge with respect to the "escalator clause". Both are equally affected by inflation. I cannot concur in the majority's restrictive reading of a statutory scheme intended to relieve the financial dilemma of a group of individuals who would otherwise receive a fixed income. Instead, I would conclude that the Legislature intended the escalator clause to apply to the widow's annuity and would hold that she is enti-

tled to an annuity equal to 1/4 the salary currently paid circuit court judges.

Nor is this conclusion affected by the Legislature's 1961 attempt to repeal the escalator provision. Since plaintiff began collecting her annuity in 1960, she obtained vested rights in the escalator clause as a third-party beneficiary of the contract between the state and her deceased husband. See *Campbell v Judges' Retirement Board,* 378 Mich 169, 181–182; 143 NW2d 755 (1966). At that time, the contract of which she was a beneficiary became completely executed and the Legislature could not properly act to diminish those rights obtained thereunder. See *Campbell,* at 181.

I would reverse.