MURPHY v STATE OF MICHIGAN

Docket No. 66589. Argued June 8, 1983 (Calendar No. 20).—Decided February 6, 1984.

Brigid Murphy, widow of George Murphy, who served as a judge of the Recorder's Court of Detroit from 1936 until his death in 1961, brought an action in the Court of Claims against the State of Michigan, the Department of Management and Budget, the Judges' Retirement Board, and the Judges' Retirement System, alleging that under the Judges' Retirement Act the annuity which she is receiving as the widow of a judge should be increased with increases in the salaries of circuit judges. The defendants moved for summary judgment, maintaining that under the act the amount of the annuity was fixed at the time of Judge Murphy's death. The Court of Claims, Ronald M. Ryan, J., granted the defendants' motion. The Court of Appeals, Allen, P.J., and Freeman, J. (Cynar, J., dissenting), affirmed (Docket No. 77-428). The plaintiff appeals.

In an opinion by Justice Kavanagh, joined by Chief Justice Williams and Justices Levin, Ryan, Brickley, and Cavanagh, the Supreme Court held:

The clear meaning of the Judges' Retirement Act applicable to this case is that the annuity of the widow of a judge who served between 1956 and 1961 increases with increases in the salaries of circuit judges.

1. The Judges' Retirement Act provided that the annuity of the widow of a judge was to be one-half of the retirement annuity of the judge. Originally the retirement annuity of the judge was fixed, but from 1956 to 1961 the act provided that a judge's annuity was to be one-half the annual salary currently paid to circuit judges, so that the annuity increased as the salaries of circuit judges increased. After 1961, the annuity of a retired judge was fixed at one-half of the salary paid by the state to a circuit judge at the time of his retirement, but by decision those who were members of the retirement system between

REFERENCE FOR POINTS IN HEADNOTES
[1, 2] 46 Am Jur 2d, Judges § 65.

1956 and 1961, while the variable annuity provision was in effect, were entitled to the variable annuity.

2. The clear meaning of the act in effect at the time of Judge Murphy's death is that a widow's annuity increases with increases in the salaries of the circuit judges. The provision for a widow's annuity required that the amount paid be one-half the amount of the judge's retirement annuity. Logically read, the section providing the widow's annuity incorporated the section providing the judge's retirement annuity, including the provision for the variable annuity. Because the judge's retirement annuity would increase with the salary paid circuit judges, and the widow's annuity was to be one-half the amount of that retirement annuity, the result contemplated was that the widow's annuity was to be equal to one-fourth the salary paid to circuit judges, and that it would increase as the salary increased.

Justice Boyle concurred because *Campbell v Judges' Retirement Board,* 378 Mich 169; 143 NW2d 755 (1966), requires the result reached.

85 Mich App 568; 272 NW2d 139 (1978) reversed.

OPINION OF THE COURT

1. JUDGES — RETIREMENT PENSIONS — WIDOWS' ANNUITIES.

The Judges' Retirement Act provided that the retirement annuity of a judge who was a member of the retirement system between 1956 and 1961 increases with increases in the salaries of circuit judges, and the section of the act which provided for an annuity for the widow of such a judge must be construed to provide for a corresponding increase in the widow's annuity (1956 PA 224, MCL 38.814, 38.819a; MSA 27.125[14], 27.125[19.1]).

2. JUDGES — RETIREMENT PENSIONS — WIDOWS' ANNUITIES.

The provisions of the Judges' Retirement Act in effect between 1956 and 1961 did not require that the amount of the annuity of the widow of a judge who died in office become fixed at one-half the amount of the retirement annuity to which the judge was entitled at the date of his death; logically read, the section of the act providing the widow's annuity incorporated the section providing the judge's retirement annuity, including the provision which required an increase in the retirement annuity with increases in the salaries of circuit judges, and the result contemplated was that the widow's annuity would increase proportionately (MCL 38.819a; MSA 27.125[19.1], since repealed and replaced by 1974 PA 337, MCL 38.819c; MSA 27.125[19.3]).

*George E. Bowles, P.C.; Fisher, Franklin, Ford, Simon & Hogg* (by *George Hogg, Jr., Francis E. Bentley,* and *Sidney M. Berman*), of counsel, for the plaintiff.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *Gerald F. Young* and *Paul J. Zimmer,* Assistants Attorney General, for the defendants.

KAVANAGH, J. Plaintiff is the widow of the late George Murphy, who served as a judge of the Detroit Recorder's Court from January 1, 1936, until his death on July 11, 1961. Pursuant to the Judges' Retirement Act, MCL 38.801 *et seq.;* MSA 27.125(1) *et seq.,* plaintiff has received a retirement annuity from the Judges' Retirement System since Judge Murphy's death. At issue in this appeal is whether plaintiff's annuity should remain at the amount to which she was entitled on July 11, 1961, or whether her annuity should be increased as the salary paid by the state to circuit judges increases.

The Court of Claims and the Court of Appeals concluded that plaintiff's annuity should not be increased. We disagree and reverse.

The Legislature established the Judges' Retirement System in the Judges' Retirement Act, 1951 PA 198, MCL 38.801 *et seq.;* MSA 27.125(1) *et seq.* Section 14 of the act provided a flat-rate annual retirement annuity of $4,500 for judges who were members of the system.[1] The original act made no provision for an annuity for the spouse of a deceased or former judge. However, 1952 PA 79 added § 19a, which provided a flat-rate annuity for qualifying widows of judges who died after the

---

[1] Prior to January 10, 1952, Recorder's Court Judge George Murphy agreed to become a member of the Judges' Retirement System.

creation of the retirement system. The amount of the annuity was $2,250, one-half the amount of a retired judge's annuity.

Both § 14 and § 19a were amended by 1956 PA 224. The annuity provided for a retired judge in § 14 was changed from the flat-rate amount to a variable amount equal to one-half of the annual salary currently paid by the state to circuit judges. Section 19a was modified to provide widows with an annuity of one-half of the annuity provided for judges in § 14:

"The widow of any member who dies or who shall have died in office or on retirement on or after September 28, 1951, and he has had 10 or more years of service prior to his death, and which widow at the time of death of the judge had been the wife of such judge for at least 10 years during his judicial service, and who has reached the age of 55, shall be entitled to apply to the retirement board for and to receive for life a retirement annuity in the amount of 1/2 of the retirement annuity provided for such judge in section 14 of this act, until she remarries". Former MCL 38.819a; MSA 27.125(19.1).

The language of this 1956 amendment is controlling in this case.[2]

---

[2] In 1961, the Legislature amended § 14 by removing the escalator clause and providing that the judge's retirement annuity would be "1/2 the salary paid by the state to him at the time of his retirement". 1961 PA 169. In *Campbell v Judges' Retirement Board*, 378 Mich 169; 143 NW2d 755 (1966), this Court decided that the 1961 amendment did not operate to deny the benefits of the escalator clause to judges who were members of the Judges' Retirement System during the period from 1956 to 1961 when the escalator clause was in effect. The Court held that a valid contract was entered into between judges and the state which created vested rights for the judges upon their retirement, and that these rights cannot be impaired or diminished by the state. Defendants agree that, consistent with *Campbell*, widows' benefits provided for in the Judges' Retirement Act may not be impaired by the Legislature. Thus, the 1961 amendment repealing the escalator clause has no effect on this dispute.

Although the Judges' Retirement Act has been amended several

Plaintiff and amici curiae[3] argue that the plain language of former § 19a[4] provides that the annuities of widows, like the annuities of judges, are to be calculated with reference to current circuit judges' salaries. Defendants argue that the long-standing administrative interpretation and application of the Judges' Retirement Act, which has been to pay all qualifying widows a fixed annuity of 1/2 of the annuity the judge would have been entitled to at his death, is correct and should not be overruled.

The Court of Claims granted the defendants' motion for summary judgment, relying primarily on two opinions of the Attorney General construing former § 19a. In 1957 the executive secretary of the Judges' Retirement System requested the Attorney General's opinion as to whether the "1/2 of the retirement annuity provided for such judge" in § 19a referred to the annuity to which the judge would have been entitled at the time of his death, or the annuity which would be currently paid a judge with the same service qualifications. In response to this inquiry the Attorney General interpreted the statute as fixing the amount of the widow's annuity at the time of the judge's death. The Attorney General said, in part:

"We think the language of the statute provides a ready answer to this question, referring, as it does, to '1/2 the annuity provided *for such judge.*' The annuity to which the judge is entitled is fixed as of the date of

times since 1961, none of these amendments affect the disposition of this case.

[3] The amici curiae are serving and retired judges who, by virtue of judicial service from 1956 to 1961 and the decision in *Campbell, supra,* are entitled to the benefit of the escalator clause in computing their retirement benefits.

[4] Section 19a was repealed and replaced by § 19c by 1974 PA 337.

his death, since it is clear that subsequent to his death he is entitled to no annuity.

"The widow can have no greater interest in his pension than he has at the time of his death. As shown above, the Judges' Retirement Act makes her annuity half that provided for him.

"The statute contains the provision, at section 19a, setting forth requirements which must be met in order for the widow to qualify for *her* annuity. These requirements include the following: she must have been his wife for at least 10 years during his judicial service; she must have reached the age of 55; she must make application to the retirement board for her retirement annuity; she ceases to be entitled to the annuity upon remarriage.

"It is clear, therefore, that under the section establishing the widow's annuity, her annuity is a different pension from his, and not merely a device whereby she steps into his shoes and continues to receive his pension. She must qualify for her own annuity, as just set forth.

"Finally, we note that the statute nowhere contains any language providing for an 'escalator' clause whereby the pension of the widow fluctuates with the going rate for justices holding positions similar to that occupied by her husband when alive.

"For the reasons set forth above, it is my ruling that the amount of the widow's annuity is fixed at half the amount provided for such judge at the time of his death, and not the annuity which would currently be paid a judge with the same service qualifications." (Emphasis in original.) 1 OAG, 1957, No 2953, pp 165-166 (April 12, 1957).

After this Court's decision in *Campbell v Judges' Retirement Board,* 378 Mich 169; 143 NW2d 755 (1966), the executive secretary of the Judges' Retirement System requested an opinion of the Attorney General as to the effect of *Campbell* on widows' annuities.[5] The Attorney General re-

---

[5] See fn 2.

sponded in an informal opinion letter dated October 19, 1967. He referred to the 1957 Attorney General Opinion and concluded that *Campbell* had no effect because the escalator clause had never been applicable to widows' annuities. The letter referred to two principles of statutory construction in support of the view that widows' annuities should not be increased:

"Such interpretation of § 19a by the Judges' Retirement Board is of long standing. It has been uniformly applied to all those who received widows' annuities under the section. It thus is entitled to great weight and would not be overturned unless a different construction was plainly required. *Roosevelt Oil Co v Secretary of State,* 339 Mich 679; 64 NW2d 582 (1954); *Aller v Detroit Police Dep't Trial Board,* 309 Mich 382; 15 NW2d 676 (1944).

"Additionally, § 19a was amended by 1965 PA 313 but not so as to change the administrative interpretation. It has been held that re-enactment of language construed by an administrative agency shows legislative approval because executive interpretation is presumed to have been known to the Legislature. *Chrysler Corp v Smith,* 297 Mich 438; 298 NW 87 (1941)."

The Court of Appeals majority affirmed, relying, as had the Court of Claims, on the Attorney General's construction of the applicable statutory provisions. 85 Mich App 568; 272 NW2d 139 (1978).[6] Judge CYNAR dissented, concluding that the Legislature intended the escalator clause to apply to the widow's annuity. He reasoned that § 19a makes the amount of the widow's pension mathematically dependent upon that provided for the judge in § 14 of the act. Judge CYNAR also pointed out that the purpose of the escalator clause was to counteract

[6] The Court of Appeals granted rehearing, but reaffirmed its original decision on January 22, 1981.

the effect of inflation upon the annuity. Since the annuity of a widow and that of a judge are equally affected by inflation, he saw no reason to distinguish between the annuities with respect to the escalator clause.

We conclude that the clear meaning of former § 19a is that a widow's annuity increases with the changes in circuit judges' salaries. Section 19a provided that the annuity is to be "in the amount of 1/2 of the retirement annuity provided for such judge in section 14". The logical reading of this language is that § 19a incorporates the provisions of § 14 for the purpose of computing the amount of the widow's annuity. Section 14 provided that on retirement a judge's annuity shall be "1/2 the annual salary being currently paid by the state to the circuit judges". The result contemplated by this statutory formula is that the widow's annuity is equal to 1/4 the salary currently paid to circuit judges.

The Attorney General's construction of § 19a of the act is inconsistent with the terminology employed by the Legislature. The Attorney General reads into the act the limitation that the basis on which a widow's annuity is calculated becomes fixed at the date of the judge's death. There is no basis for this strained and narrow interpretation.

The principles of statutory construction cited by the Attorney General do not require a contrary result. The principle that a long-standing interpretation of a statute by the agency which administers it is entitled to great weight does not control when the interpretation is clearly wrong. *Schuhknecht v State Plumbing Board,* 277 Mich 183, 186-187; 269 NW 136 (1936).

Second, the fact that § 19a was amended by 1965 PA 313, but not so as to change the administrative

interpretation, does not evidence legislative approval of the administrative interpretation of the 1956 amendment. The 1961 amendment of § 14 had already prospectively eliminated the escalator feature for *all* annuitants.

The Attorney General also found it significant that § 19a contained no express language that the annuity for widows escalates as the state salary paid to circuit judges increases. We find this argument unpersuasive, because the escalator clause was incorporated into § 19a by reference to § 14.

Accordingly, we reverse the judgments of the Court of Claims and the Court of Appeals and remand the case to the Court of Claims for further proceedings.

No costs, a public question being involved.

WILLIAMS, C.J., and LEVIN, RYAN, BRICKLEY, and CAVANAGH, JJ., concurred with KAVANAGH, J.

BOYLE, J. *(concurring).* I agree that *Campbell v Judges' Retirement Board,* 378 Mich 169; 143 NW2d 755 (1966), requires the result reached in this case.